UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIAM T. MORRISON, JR.,

        Plaintiff,

v.                                        Case No. 3:15-cv-588-J-39JBT

JULIE JONES, SECRETARY,
et al.,

        Defendants.

_____

**<u>ORDER</u>**

**I. Status**

    Plaintiff initiated this case by filing a Civil Rights
Complaint Form (Complaint)[1] (Doc. 1), dated April 29, 2015, and
filed with the Clerk on May 11, 2015.[2] He filed a typewritten
Amended Complaint (Amended Complaint) (Doc. 37) on July 20, 2016,
pursuant to the mailbox rule.[3] Defendants' Motion to Dismiss
(Motion) (Doc. 50) is before the Court. Plaintiff filed a Reply to
the Defendants' Motion to Dismiss (Response) (Doc. 56).

---

    [1] The Court references the pagination assigned by the
electronic filing system.

    [2] The Complaint does not contain a statement providing the
date Plaintiff turned the Complaint over to prison authorities for
mailing. In addition, it does not have a date stamped by the
prison authorities. The Court will assume for the limited purposes
of this opinion that Plaintiff turned the Complaint over to the
prison authorities for mailing on April 29, 2015.

    [3] At the time of the filing of the Amended Complaint,
Plaintiff was, and is currently confined in the United States
Penitentiary, Leavenworth, Kansas.

## II. Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  While "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (citation and footnote omitted).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id</u>. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

### III. Amended Complaint

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 against the Defendants in their individual and official capacities, and he brings state tort claims against the Defendants for their negligent actions in their individual and official capacities. Amended Complaint at 2. The Defendants are Julie Jones, the Secretary of the Florida Department of Corrections; Monroe Barns, Warden of Columbia Correctional Institution (CCI); Randy L. Polk, Assistant Warden of CCI, Keita Peterson, Lieutenant at CCI; Tavia Fyre, Mail Room Supervisor at CCI; Brenda Anderson, Mail Room employee at CCI; and J. J. Fields,

Sergeant at CCI.  Id. at 2-3.  Although not a model of clarity, Plaintiff asserts that the Defendants are liable because of "actions of neglect to prevent the conspiracy to interfere with Plaintiff's rights to access the courts, due process, and equal protection of law in preforming [sic] their duties under the color of state law; retaliation; impeding Plaintiff's rights to access the courts; equal protection of law, and due process."  Id. at 3.

In his statement of Facts, Plaintiff alleges that in August 2012, he was an inmate in the care and custody of the Florida Department of Corrections (FDOC), imprisoned at CCI.  Id. at 4.  He prepared a Missouri post conviction motion (Form 40), and it was due to be filed in Case No. 12-LF-CV-00885 by August 14, 2012.  Id. The Missouri rules require that the Form 40 be notarized before mailing/filing.  Id.  Plaintiff completed and copied the Form 40 "on or before" Friday, August 3, 2012, and deemed it ready for mailing.  Id.

Per policy and procedure of the institution, inmates had access to a notary for preparing legal documents for mailing on Wednesdays.[4]  Id.  Plaintiff, on Friday, August 3, 2012, approached the center gate area at CCI, and requested permission to obtain notary and legal mail services, but he was informed by Defendant Fields that notary services were only provided on Wednesdays.  Id.

---

[4] Plaintiff refers to Defendants Jones, Barns, and/or Polk's Wednesday only notary policy.  Amended Complaint at 5.

Defendant Fields advised Plaintiff that if he heard about or caught Plaintiff requesting notary services again before Wednesday, he would have Plaintiff locked in confinement for disobeying a verbal order. Id. Plaintiff told Defendant Fields that he had a pending legal deadline of August 14, 2012 in the Missouri courts. Id. at 4-5. Defendant Fields ordered Plaintiff to depart the center gate area, and threatened to have Plaintiff placed in confinement if he continued to seek notary services prior to Wednesday. Id. at 5. Defendant Fields told Plaintiff that he had discussed Plaintiff's "grievance writing ass" with Defendant Polk, and if they (Fields and Polk) had their way, they would see to it that Plaintiff's petition would never get notarized and mailed. Id.

On Wednesday, August 8, 2012, Plaintiff handed his Form 40 over to Defendant Peterson for notary and legal mail services. Id. Plaintiff told her about Defendants Fields' actions and the August 14, 2012 deadline. Id. Pursuant to the Florida Administrative Code, Chapter 33-210.102(8)(h), the required time frame for the mail to be turned over to the United States Postal Service for mailing was twenty-four hours from receipt of the mail. Id.

Plaintiff alleges that Defendants Polk, Peterson, Frye, Anderson, and Fields, through a conspiracy and/or with deliberate indifference, failed to turn over the Form 40 to the Postal Service

in a timely fashion.[5]  <u>Id</u>. at 5-6.  The mail was turned over five days after receipt, on Monday, August 13, 2012.  <u>Id</u>. at 6.  The Form 40 did not reach the Missouri Clerk's Office until Wednesday, August 15, 2012, a day past the filing deadline.  <u>Id</u>.  The Missouri court does not recognize the mailbox rule, and the Rule 40 was dismissed as untimely.  <u>Id</u>.  In the motion, Plaintiff attacked a Missouri criminal judgment and sentence.  <u>Id</u>.

Defendant Polk denied Plaintiff's grievance, although he admitted that the required mailing time frames were not met.  <u>Id</u>. Plaintiff appealed this decision, and his appeal was approved.  <u>Id</u>.

Plaintiff completed his Florida prison sentence on November 30, 2015.  <u>Id</u>. at 7.  He notified the Florida Department of Financial Services, General Counsel's Office of his intent to litigate against the Defendants.  <u>Id</u>.  He did not receive a response.  <u>Id</u>.

### IV.  Counts

Five Counts are presented in the Amended Complaint:

Count I: Defendants Jones, Barns and Polk for the Institutional Notary Rule (Plaintiff seeks compensatory, punitive and nominal damages);

Count II: Defendant Fields Deliberate Indifference and Retaliatory Actions (Plaintiff seeks compensatory and punitive damages);

---

[5] Plaintiff mentions that he had previous encounters with Defendants Polk, Frye, Anderson, and Fields concerning the mishandling of Plaintiff's incoming legal mail.  Amended Complaint at 7.

Count III: Defendant's [sic] Polk, Peterson, Frye, Anderson, and Fields Collectively and Individually Conspired to Retaliate Against Plaintiff (Plaintiff seeks compensatory, punitive, and nominal damages);

Count IV: Defendant Polk's Deliberate Indifferencee [sic] in Denying FDOC Formal Grievance # 1209-251-096 (Plaintiff seeks compensatory, punitive, and nominal damages); and

Count V: Defendants Jones and Barns Neglect to Prevent Conspiracy (Plaintiff seeks compensatory, punitive, and nominal damages).

Amended Complaint at 7-13.

## V. Summary of the Arguments

Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Motion at 4-5. In doing so, they contend Plaintiff: (1) failed to disclose his prior litigation and the action should be dismissed for abuse of the judicial process; (2) failed to exhaust his administrative remedies with regard to retaliation and conspiracy; (3) failed to state a claim of retaliation that is plausible on its face; (4) failed to state a claim of denial of access to the courts that is plausible on its face with regard to (A) deliberate indifference on the part of Defendant Fields, (B) Defendants' notary policy, and (C) the isolated, untimely mailing incident; (5) failed to state a claim as there is no constitutional right in the grievance procedure; (6) failed to state a claim of conspiracy to violate civil rights; (7) failed to state a viable claim of supervisory liability; and (8) is not entitled to compensatory or punitive damages against the

Defendants in the absence of a physical injury. Defendants also contend they are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities for monetary damages.

In response to Defendant's Motion, Plaintiff asserts that the Prison Litigation Reform Act (Act or PLRA) is inapplicable to his case because, prior to the filing of the Amended Complaint, he discharged his Florida prison sentence, and he is no longer a prisoner for purposes of the Act. Response at 2. Thus, Plaintiff reasons that he was not required to comply with the requirements of the Act as he was no longer a prisoner for purposes of the Act, and he was not prompted to address his previous filings because he filed a typewritten Amended Complaint rather than an amended civil rights complaint form. Id. at 2-3. He claims he exhausted his administrative remedies prior to the filing of his Complaint. Id. at 4-6. He opines that he has sufficiently alleged a retaliation claim. Id. at 6-10. He asserts that he has adequately alleged a claim of denial of access to the courts. Id. at 11-16. He concedes that he has no right to a grievance procedure. Id. at 16. He submits that he has adequately alleged a conspiracy claim that is plausible on its face. Id. at 17-19. Plaintiff contends that he has adequately raised a supervisory liability claim that is plausible on its face. Id. at 19-20. Finally, he asserts that he complied with pre-suit notification requirements, and that

Defendants are not entitled to sovereign immunity with respect to Plaintiff's state tort claims.  Id. at 20.

## VI. Law and Conclusions

### A.  Eleventh Amendment Immunity

Defendants raise the defense of sovereign immunity to the extent Plaintiff is seeking monetary damages against them in their official capacities.  Motion at 23.  In this regard, the Motion is due to be granted.  An official capacity claim for monetary damages is barred by sovereign immunity.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-102 (1984).  Thus, insofar as Plaintiff seeks monetary damages for the violation of his constitutional rights from the Defendants in their official capacities, the Eleventh Amendment bars suit.  Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam).  Of note, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Pennhurst State Sch. & Hosp., 465 U.S. at 121 (finding the principle also applies to state-law claims brought into federal court under pendent jurisdiction).

### B.  Conspiracy

Count III: Defendants Polk, Peterson, Frye, Anderson, and Fields Collectively and Individually Conspired to Retaliate Against Plaintiff (Plaintiff seeks compensatory, punitive and nominal damages); and

Count V: Defendants Jones and Barns Neglect to Prevent Conspiracy (Plaintiff seeks compensatory, punitive and nominal damages).

In these two claims, Plaintiff alleges that Defendants Polk, Peterson, Frye, Anderson, and Fields conspired together to retaliate against Plaintiff, and Defendants Jones and Barns failed to take preventative actions to circumvent the formation of this conspiracy.

In order to establish a § 1853(3) conspiracy claim, Plaintiff has to show two or more persons entered an agreement to deprive him of his civil rights. 42 U.S.C. § 1853(3). Here, Plaintiff claims that these FDOC's employees conspired to deprive him of his constitutional rights and failed to take corrective action with respect to the conspiracy to retaliate. In this instance, all of these Defendants were employees of the FDOC at the time of the events in question, and all of the allegations arise out of their duties as employees of the FDOC.

Defendants contend that Plaintiff has failed to state a claim due to the intracorporate conspiracy doctrine. Motion at 19-21. "The intracorporate conspiracy doctrine bars conspiracy claims against corporate or government actors accused of conspiring together within an organization." Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010), aff'd by 132 S.Ct. 1497 (2012). It is axiomatic that the employees of the FDOC "constitute a single legal entity that cannot conspire with itself." Dickerson v. Alachua Cnty. Comm'n., 200 F.3d 761, 768 (11th Cir.), cert. dismissed, 530 U.S. 1285 (2000). Since all of the Defendants actions are

attributed to the entity itself, there is negation of the
multiplicity of actors needed to constitute a conspiracy. Detris
v. Coats, 523 F. App'x 612, 615 (2013). See Grider v. City of
Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010) (finding that
the alleged conspiracy of the law enforcement officers involved
job-related functions within their scope of employment, although
they may have acted unconstitutionally, and the conspiracy claim
failed because of the intracorporate conspiracy doctrine).

In this case, Defendants Polk, Peterson, Frye, Anderson,
Fields, Jones, and Barns were all employees of the FDOC at the time
of the events in question, they were all performing their duties
for the FDOC and they were undoubtedly performing job-related
duties. Since the alleged conspiracy occurred only within that
governmental entity, the intracorporate conspiracy doctrine bars
the conspiracy claims against them. See Claudio v. Crews, No.
5:13-cv-345-MP-EMT, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014)
(not reported in F.Supp.3d) (finding the job-related functions of
the correctional employees "well within Defendants' scope of
employment as FDOC employees"); McLemore v. Cruz, No. 6:10-cv-766-
Orl-28KRS, 2011 WL 4101729, at *4 (M.D. Fla. Sept. 14, 2011) (not
reported in F.Supp.2d) (finding the intracorporate conspiracy
doctrine applicable in a case claiming co-conspirators,
correctional officers at the Orange County Jail, created a "fight-
club" at the jail staging inmate fights); Myers v. Fla., No. 5:12-

cv-259-RS-EMT, 2014 WL 68067, at *10 (N.D. Fla. Jan. 8, 2014) (not reported in F.Supp.3d) (finding that when all of the alleged conspirators were employees of the FDOC and no outsiders were involved in the alleged conspiracy, the intracorporate conspiracy doctrine applicable).

These Defendants have been accused of conspiring together within the organization to violate Plaintiff's rights. No outsiders are alleged to have been involved in the conspiracy to retaliate and failure to take corrective action with respect to the conspiracy. Thus, the intracorporate conspiracy doctrine bars the claims raised in counts three and five against the employees of the FDOC. Therefore, Defendants' Motion to Dismiss is due to be granted in this regard.

Alternatively, the Court finds the Motion to Dismiss is due to be granted for Plaintiff's failure to present more than a vague and conclusory allegation that a conspiracy exists. Motion at 19. He has not pled enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 570.

### C. No Constitutional Right in the Grievance Procedure

Count IV: Defendant Polk's Deliberate Indifference in Denying FDOC Formal Grievance # 1209-251-096 (Plaintiff seeks compensatory, punitive and nominal damages).

In this ground, Plaintiff alleges that Defendant Polk exhibited deliberate indifference in denying Plaintiff's grievance. Defendant Polk asserts there is no constitutional right in the

grievance procedure. Motion at 18-19. Plaintiff concedes that he has no such right. Reply at 16.

The Eleventh Circuit has said: "[w]e agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure. <u>See</u>, <u>e.g.</u>, <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) (stating that Constitution creates no entitlement to voluntarily established grievance procedure); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (same)." <u>Thomas v. Warner</u>, 237 Fed. App'x 435, 437-38 (11th Cir. 2007). Moreover, insofar as Plaintiff alleges that his grievance was improperly denied, such a claim does not support a § 1983 action. <u>See</u> <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that the failure to act constituted an acquiescence in the unconstitutional conduct), <u>cert</u>. <u>denied</u>, 530 U.S. 1264 (2000). As such, Defendants' Motion to Dismiss is due to be granted in this regard.

## D. Notary Rule

Count I: Defendants Jones, Barns and Polk for the
Institutional Notary Rule (Plaintiff seeks compensatory,
punitive and nominal damages).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff
must allege that (1) the defendant deprived him of a right secured
under the United States Constitution or federal law, and (2) such
deprivation occurred under color of state law.  Salvato v. Miley,
790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d
1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted);
Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per
curiam) (citations omitted).  Defendants contend that Plaintiff
cannot demonstrate that the notary policy was the reason the
pleading was untimely filed as the document was notarized in a
timely fashion, Plaintiff was aware of the once-a-week-on-Wednesday
notary service policy, and he had plenty of time to plan and
prepare his documents in accordance with this policy.  Motion at
16-17.

A deferential standard of review is applied when reviewing
prison regulations impinging on inmates' constitutional rights, and
the regulation is valid if it is reasonably related to legitimate
penological interests.  Lewis v. Casey, 518 U.S. 343, 361 (1996).
"It is indisputable that indigent inmates must be provided at state
expense with paper and pen to draft legal documents with **notarial
services to authenticate them**, and with stamps to mail them."

<u>Bounds v. Smith</u>, 430 U.S. 817, 824-25 (1977).  Also, habeas corpus and civil rights actions, actions that protect most valued rights, are considered to be of fundamental importance in our constitutional scheme.  <u>Bass v. Dep't of Corr.</u>, 684 So.2d 834, 835 (Fla. 1996) (citations omitted).  Thus, inmates must not be prohibited from filing petitions seeking habeas corpus relief or complaints alleging violations of federally protected rights.

As such, there must be meaningful access to the courts:

> It is well-recognized that inmates have a constitutional right of access to the courts, which mandates that they be provided with reasonable access to law libraries or persons trained in the law. <u>Bounds v. Smith</u>, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This right requires institutions to ensure that an inmate has "a reasonable adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." <u>Id</u>. at 825.

> To state a claim for denial of access to courts, plaintiffs "must not only show that prison authorities failed to provide such access or assistance, but that the failure 'hindered [the plaintiff's] efforts to pursue a legal claim.'" <u>Scruggs v. Squadrito</u>, 165 F.3d 33 (7th Cir. 1998) (quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). As such, courts have held that "[p]laintiffs must plead prejudice to state a claim when challenging minor interferences with access to the courts...." <u>Martin v. Davies</u>, 917 F.2d 336, 341 (7th Cir. 1990) (affirming district court's dismissal of claim that prison official's refusal to notarize forms resulted in denial of access to courts); <u>see also Scruggs</u>, 165 F.3d 33 (concluding that the plaintiff could not prevail on claim of denial of access to court

based on defendants refusal to provide notary
services because plaintiff failed to point to
an actual injury).

Nelson v. Orange Cty. Jail Notary Dep't, No. 608CV-2083-ORL-31KRS,
2009 WL 464950, at *1-2 (M.D. Fla. Feb. 24, 2009) (not reported in
F.Supp.2d).

Here, Plaintiff alleges no operative facts which show that
Defendants Jones, Barns and Polk's actions with regard to the once-
a-week notary policy at CCI deprived Plaintiff of meaningful access
to the courts.  Of import, Plaintiff had ninety days to file his
Form 40.  The Missouri court mandate issued May 16, 2012.  The due
date for the Form 40 was Tuesday, August 14, 2012.  Plaintiff
initially sought notary services seventy-nine days after the
mandate, on Friday, August 3, 2012, although he was fully aware
that notary services were offered at the institution on Wednesdays
and would have been available on Wednesday, August 1, 2012, if he
had chosen to access the services on that date.[6]  On Friday, August
3, 2012, Plaintiff was told to return for notary services on
Wednesday, August 8, 2012 based on institutional policy.  Plaintiff
returned for notary services on August 8, 2012, well within the
ninety-day period, and signed the Form 40 and had it notarized.
Thus, notary services were provided in a timely fashion, allowing

_____

 [6] Plaintiff alleges that his Form 40 was ready for mailing "on
or before Friday, Aug. 3, 2012."  Amended Complaint at 4.

for the mailing of the document to Missouri within a twenty-four hour period, as required by the rules.[7]

With regard to the notary services, Plaintiff does not present a cognizable claim for relief. <u>Pyles v. Carlson</u>, 698 F.2d 1131, 1132-33 (11th Cir. 1983) ("Other complaints were properly dismissed because they state no cognizable ground for relief: . . . initial refusal of a secretary to notarize a legal document[.]"). The initial refusal to notarize the document on Friday, August 3, 2012 did not cause the untimely filing of the document. Plaintiff has not presented allegations demonstrating that the actions about which he complains or the conduct of the Defendants with regard to the notary services caused adverse consequences or an actual injury. The notary policy provided reasonable adequate opportunity to present constitutional claims to the courts.

Defendants' Motion to Dismiss is due to be granted with respect to the claim of deprivation of notary services. In this instance, Plaintiff has not alleged sufficient facts that an actual injury resulted from Defendants' conduct with respect to having a once-a-week notary service at CCI.

_____

[7] The delay in processing the legal document came after the provision of notary services. The mail was not processed within the twenty-four hour period provided for in the rules. Instead, it was mailed five days later, on August 13, 2012. It took two days for the mail to get to the Missouri court, and the Form 40 was filed on Wednesday, August 15, 2012, a day past the ninety-day deadline.

### E. Retaliation Claim

> Count II: Defendant Fields Deliberate Indifference and
> Retaliatory Actions (Plaintiff seeks compensatory and
> punitive damages).

The last claim to be addressed is the retaliation claim against Defendant Fields. In this count, unlike all of his other counts in the Amended Complaint, Plaintiff does not seek nominal damages. Amended Complaint at 10. Instead, Plaintiff seeks "at least $750,000.00 in damages[;]" the cost of the suit, including interest; attorney's fees; and punitive damages. <u>Id</u>.

Although Plaintiff contends that he is not subject to the PLRA, that is certainly not the case. <u>See</u> Reply at 2. Plaintiff was an inmate of the Florida penal system when he filed his original Complaint (Doc. 1). The Court granted him leave to proceed as a pauper. Order (Doc. 5). Thereafter, Plaintiff notified the Court that he was completing his Florida prison sentence and being immediately transferred into federal custody to serve a federal prison sentence. Plaintiff's Motion (Doc. 34). At the time of the filing of his Amended Complaint, he was a prisoner confined in the United States Penitentiary at Leavenworth, Kansas. Amended Complaint (Doc. 37). To date, Plaintiff is confined in the United States Penitentiary.

A prisoner, as defined under 28 U.S.C. § 1915(h), is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for,

violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." By definition, Plaintiff is a prisoner. The PLRA applies to federal prisoners. <u>See</u> <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324 (11th Cir. 1998) (finding 42 U.S.C. § 1997e(a), the exhaustion requirement, expressly provides that it applies to actions brought under section 1983 or any other Federal law); <u>Hernandez v. Ryan</u>, No. 10-22789-CIV-MARTINEZ, 2010 WL 3447487, at *3 (S.D. Fla. Aug. 11, 2010) (not reported in F.Supp.2d) (recognizing that civil rights cases filed by state or federal prisoners dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and/or 28 U.S.C. § 1915(e)(2)(B) constitute strikes pursuant to the provisions of the PLRA), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>by</u> 2010 WL 3447486 (S.D. Fla. Aug. 31, 2010); <u>Newson v. Benton</u>, No. 09-14333-CIV, 2009 WL 5217014, at *4 (S.D. Fla. Dec. 29, 2009) (not reported in F.Supp.2d) (finding that mandamus petitions against federal or state officials qualify as civil actions under 28 U.S.C. § 1915(g)).

Defendants contend that Plaintiff cannot recover compensatory or punitive damages against them in the absence of physical injury. Motion at 22-23. Upon review, Plaintiff's request for compensatory and punitive damages regarding his federal claims is precluded by 42 U.S.C. § 1997e(e) while he is incarcerated:

> Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail,

prison, or other correctional facility, for
mental or emotional injury suffered while in
custody without a prior showing of physical
injury."  This statute is intended to reduce
the number of frivolous cases filed by
imprisoned plaintiffs, who have little to lose
and excessive amounts of free time with which
to pursue their complaints.  <u>See</u> <u>Harris v.</u>
<u>Garner</u>, 216 F.3d 970, 976-79 (11th Cir. 2000)
(en banc) (surveying the legislative history
of the PLRA).  An action barred by § 1997e(e)
is barred only during the imprisonment of the
plaintiff; therefore, such action should be
dismissed without prejudice by the district
court, allowing the prisoner to bring his
claim once released and, presumably, once the
litigation cost-benefit balance is restored to
normal.  <u>Id</u>. at 980.

Tracking the language of the statute, §
1997e(e) applies only to lawsuits involving
(1) Federal civil actions (2) brought by a
prisoner (3) for mental or emotional injury
(4) suffered while in custody.  In <u>Harris</u>, we
decided that the phrase "Federal civil action"
means all federal claims, including
constitutional claims.  216 F.3d at 984-85.

<u>Napier v. Preslicka</u>, 314 F.3d 528, 531-32 (11th Cir. 2002), <u>cert</u>.

<u>denied</u>, 540 U.S. 1112 (2004).

Like Napier, Plaintiff is seeking damages for the deprivation

of his federal constitutional rights.  <u>Id</u>. at 531 (Napier's civil

rights action presented a Fourth Amendment claim for monetary

damages against two deputies for mistaken arrest and imprisonment).

The harm allegedly occurred to Plaintiff while he was confined in

the FDOC.  Thus, because the harm complained of by Plaintiff

occurred while he was in custody, the PLRA is applicable to his

claim.  Indeed, "the PLRA covers all federal civil lawsuits filed

by prisoners concerning emotional or mental injury suffered" while in custody. Id. at 534.

Liberally construing the pro se Amended Complaint, the facts as alleged by Plaintiff do not show that he suffered a physical injury as a result of his complaints; Plaintiff has alleged no physical injury whatsoever. In count II, Plaintiff seeks "at least $750,000.00 in damages" and punitive damages against Defendant Fields. Even a liberal construction of Plaintiff's Amended Complaint does not support a contention that he is seeking nominal damages from Defendant Fields.[8] Honors v. Judd, No. 8:10-cv-22-T-33AEP, 2011 WL 3498287, at *6 (M.D. Fla. Aug. 10, 2011) (not reported in F.Supp.2d) (noting that in Hughes v. Lott, 350 F.3d 1157 (11th Cir. 2003), the Eleventh Circuit held that 1997e(e) does not bar suits by prisoners if they have not alleged a physical injury if they seek nominal damages, but finding that "Honors claim does not fall within that narrow exception as he is seeking, among other things, an award of punitive and compensatory damages"); McCiskill v. Thompson, No. 3:10cv211/MCR/MD, 2010 WL 4483408, at *3 n.4 (N.D. Fla. Sept. 22, 2010) (not reported in F.Supp.2d) (holding that the narrow exception in Hughes v. Lott with regard to a

---

[8] A request for a large sum of money does not constitute a request for nominal damages, of which $1.00 is the norm, "as nominal damages implies a mere token or trifling." Williams v. Langford, No. 2:13-cv-315-J-FtM-38CM, 2015 WL 163226, at *7 (M. D. Fla. Jan. 12, 2015) (not reported in F.Supp.3d). Plaintiff is certainly not seeking a token or trifling.

nominal damages claim does not apply because McCiskill seeks punitive damages and attorneys' fees, not nominal damages), report and recommendation adopted by 2010 WL 4457182 (N.D. Fla. Oct. 29, 2010).

Plaintiff's case does not fall within the narrow exception as he is seeking, among other things, an award of punitive and compensatory damages. The Court concludes that "Plaintiff's complaint cannot be liberally construed as requesting nominal damages" against Defendant Fields in Count II based on the fact that Plaintiff is clearly seeking substantial damages against Fields: at least $750,000.00 in compensatory damages and punitive damages. Honors v. Judd, 2011 WL 3498287, at *6 n.2. He does not request nominal damages against Defendant Fields in this count, and his request for relief, even if liberally construed by the Court, does not contain a request for nominal damages. Of import, Plaintiff makes it very clear that he is seeking substantial compensatory and punitive damages against Defendant Fields.

In light of Plaintiff's failure to satisfy the physical injury requirement, Plaintiff's claims for compensatory and punitive damages may not proceed. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) (finding dismissal of a punitive damages claim appropriate if a plaintiff fails to meet § 1997e(e)'s physical injury requirement). Also, the Eleventh Circuit's decision in Hughes v. Lott is inapplicable as Plaintiff's complaint cannot be liberally construed to include a request for nominal damages.

Here, Plaintiff is bringing a federal civil action claiming a denial of federal constitutional rights, he is a prisoner, and his alleged injuries occurred while he was in custody. Plaintiff is seeking a large sum of money in compensatory damages as well as punitive damages, and he is clearly not seeking a trifling or token sum of money. Furthermore, Plaintiff did not suffer any physical injury as a result of the alleged actions of Defendant Fields. Therefore, because Plaintiff is actually seeking damages for mental or emotional injuries, his action is barred by § 1997e(e) as long as he remains incarcerated. Accordingly, for all of the above-stated reasons, the Motion to Dismiss is due to be granted.

Plaintiff attempts to present another conspiracy claim under Count II: "Defendant Fields also conspired with Defendants Polk, Peterson, Frye, and Anderson in not adhering to the clearly established FAC 33 outgoing legal mail rule, and not timely handing over Plaintiff's Form 40 legal pleading to U.S. Postal Services for mailing to the Missouri Courts, causing it to be received un-timely." Amended Complaint at 9-10. These Defendants have been accused of conspiring together within the organization to violate Plaintiff's rights. No outsiders are alleged to have been involved in the conspiracy. Thus, the intracorporate conspiracy doctrine bars the conspiracy claim raised in count two against the employees of the FDOC. Therefore, Defendants' Motion to Dismiss is due to be granted in this regard.

Alternatively, Plaintiff has failed to make particularized allegations that this alleged conspiracy existed. This conclusory allegation of a conspiracy without information supporting a claim that these Defendants reached an understanding to deny the Plaintiff's rights is not plausible on its face. Thus, Defendants' Motion is due to be granted.

Plaintiff alleges that he was deprived of his constitutional rights when Defendant Fields refused to obtain a notary for Plaintiff on Friday, August 3, 2012, told him that notary services were only provided on Wednesdays when Plaintiff approached him on Friday, and warned Plaintiff that if he sought to obtain notary services again before Wednesday, Defendant Fields would lock Plaintiff in confinement for disobeying a verbal order.[9]  Amended Complaint at 4.  Plaintiff asserts that Defendant Fields deprived him of his constitutional rights to access the courts, due process, equal protection, and free speech.

This Court has already concluded that the provision of notary services on Wednesdays did not deprive Plaintiff of his constitutional rights or deprive him of access to the courts. The initial refusal to notarize the document on Friday, August 3, 2012 did not cause the untimely filing of the Form 40 document. The document was timely signed and notarized on August 8, 2012.

_____

[9] Based on the documents before the Court, it appears that Plaintiff exhausted his administrative remedies, or made concerted efforts to do so.

Plaintiff has not presented allegations demonstrating that the actions about which he complains or the conduct of Defendant Fields with regard to the notary services caused adverse consequences or an actual injury.

Plaintiff also relies on the Equal Protection and Due Process Clauses of the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "To plead an equal protection claim, a plaintiff must allege that 'through state action, similarly situated persons have been treated disparately.' Thigpen v. Bibb County, Ga., Sheriff's Dep't, 223 F.3d 1231, 1237 (11th Cir. 2000), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)." Thorne v. Chairperson Florida Parole Comm'n, 427 Fed. App'x 765, 771 (11th Cir. 2011) (per curiam).

Specifically, to establish a claim under the Equal Protection Clause, a prisoner such as Plaintiff, can allege that "'(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race.' Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir.2001) (quotation omitted)

(hereinafter Ray)." Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 Fed. App'x 9, 12 (11th Cir. 2010) (per curiam).

Plaintiff has not offered any support for a claim of an equal protection violation under the Fourteenth Amendment, either by alleging facts in support of such a claim, or by submitting evidence of an equal protection violation. Indeed, he has failed to present any operative facts showing he was treated differently from similarly-situated prisoners due to some constitutionally protected interest, such as race. His due process claim is also not plausible on its face as it is both vague and conclusory.

To the extent Plaintiff raises a state tort negligence claim against Defendant Fields (and any other Defendants) it will be dismissed. See Amended Complaint at 2. Although this Court may exercise supplemental jurisdiction over a state law claim, the Court elects not to do so, particularly when no federal claims remain. Negron v. Bryant, No. 3:08-cv-1118-J-34MCR, 2010 WL 746727, at *18 (M.D. Fla. Mar. 3, 1010) (not reported in F.Supp.2d) ("Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over state law claims related to the federal court action.").

## F. Failure to Disclose Prior Litigation

Plaintiff filed an original Complaint (Doc. 1), declaring it to be true and correct under penalty of perjury. Defendants assert that Plaintiff failed to disclose that he had filed at least

thirteen federal and state cases dealing with the same or similar facts involved in this action or otherwise relating to his imprisonment or conditions thereof. Motion at 5-8. Plaintiff had an opportunity to respond to this contention in his Response, and he did so. Plaintiff states that he considered himself no longer to be a prisoner by the time he filed his Amended Complaint, he elected not to use the civil rights complaint form when he amended his complaint and was therefore not prompted to address the question of his previous un-revealed cases, and the original Complaint should be considered non-existent. Response at 2-3.

The Court has difficulty accepting Plaintiff's excuses as either persuasive or acceptable. First, Plaintiff was a prisoner at the time he filed his Amended Complaint as he was confined in a United States Penitentiary. His contention that he was no longer a prisoner is completely without merit. Secondly, he was obliged to tell the truth in his original Complaint, and he declared that he did so in his signed, sworn declaration. Complaint at 11. Plaintiff does not contest the fact that he failed to reveal his previously filed state and federal cases in response to the questions set forth on page 5 of the Complaint. Response at 3. Also, when he amended his Complaint, he did not offer corrected responses to the questions concerning his litigation history. Instead, he filed a typewritten Amended Complaint, again without correcting or revealing his litigation history.

Although Plaintiff is proceeding on an Amended Complaint, he should not be rewarded for this behavior. He is a prolific litigant in the courts. The sophistication of Plaintiff's substantive arguments and his knowledge of the procedural rules convince this Court that Plaintiff <u>understands</u> the severity of not revealing the truth to the Court. This Court has the authority to control and manage matters before it, and Plaintiff must be expected to conform to acceptable standards in approaching this Court. As such, this Court will not tolerate false responses and/or statements in any pleading or motion filed for consideration by the Court. If the Court cannot rely on the statements and/or responses made, it threatens the quality of justice.

Upon consideration of the documents before the Court, Plaintiff was less than forthright when he responded no to the questions as to whether he had initiated lawsuits in the state and federal courts dealing with the same or similar facts or otherwise relating to his imprisonment or conditions and when he failed to disclose information about prior cases in the space provided. Indeed, "failure to comply with court rules requiring disclosures about a plaintiff's previous litigation constitutes an abuse of the judicial process warranting dismissal." <u>Sears v. Haas</u>, 509 F. App'x 935, 936 (11th Cir. 2013) (per curiam) (citation omitted). <u>See</u> <u>Hood v. Tompkins</u>, 197 F. App'x 818, 819 (11th Cir. 2006) (per curiam) (finding dismissal is not an abuse of discretion); <u>Jacobs</u>

v. Comerford, No. 3:13cv52/RV/EMT, 2013 WL 6184052, at *4 (N.D. Fla. Nov. 25, 2013) (not reported in F.Supp.2d) (finding the plaintiff's pro se status an unacceptable excuse).

Not only is Plaintiff an active litigant, the Court concludes that Plaintiff was responsible for answering the questions on the civil rights complaint form truthfully, and Plaintiff's unconvincing excuses are found to be unacceptable. In order to control and manage cases before it, this Court must require conformance to acceptable standards by the litigants in approaching this Court. If Plaintiff decides to file any other actions in this Court, he must completely and truthfully respond to all questions presented. Anything less is unacceptable, and Plaintiff will be subjected to Court sanctions if he is non-compliant with this directive.

Therefore, it is now

**ORDERED:**

1.    Defendants' Motion to Dismiss (Doc. 50) is **GRANTED**.

2.    The Clerk shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of September, 2017.

BRIAN J. DAVIS
United States District Judge

sa 8/17
c:
William T. Morrison, Jr.
Counsel of Record